Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

_____ Division

| | |
|---|---|
| Matthew Charles Belanger | Case No. _____ |
| Plaintiff(s) | (to be filled in by the Clerk's Office) |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: (check one)  ✔ Yes  ☐ No |
| -v- | |
| New York University and NYU Shanghai | |
| Defendant(s) | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Matthew Charles Belanger |
   | Street Address | 447 Broadway, 2nd Floor #345 |
   | City and County | New York, New York |
   | State and Zip Code | New York 10013 |
   | Telephone Number | 212-203-0405 |
   | E-mail Address | matt@fatbits.com |

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1
- Name: New York University
- Job or Title (if known):
- Street Address: 70 Washington Square South, 11th Floor
- City and County: New York, New York
- State and Zip Code: New York 10012
- Telephone Number: 212-998-2246
- E-mail Address (if known): daniel.saperstein@nyu.edu

Defendant No. 2
- Name: NYU Shanghai (Shanghai New York University)
- Job or Title (if known):
- Street Address: 1555 Century Ave
- City and County: Pudong New District
- State and Zip Code: Shanghai, China 200122
- Telephone Number: 212-998-2261
- E-mail Address (if known): danny.magida@nyu.edu

Defendant No. 3
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Multiple, see attachement section Places of Employment |
| Street Address | paragraphs 7 - 9. |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:
The Equal Pay Act of 1963, The Rehabilitation Act of 1973, 42 U.S.C. § 1981 and 42 U.S.C. § 1

☑ Relevant state law *(specify, if known)*:
New York Labor Law and New York Human Rights Law

☑ Relevant city or county law *(specify, if known)*:
New York City Human Rights Law

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [x] Failure to hire me.
- [x] Termination of my employment.
- [x] Failure to promote me.
- [x] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*: Harassment

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) Beginning March 2017 and ongoing.

C. I believe that defendant(s) *(check one)*:
- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [x] race — Caucasian
- [x] color — White
- [x] gender/sex — Male
- [ ] religion
- [x] national origin — USA
- [ ] age *(year of birth)* _____ (only when asserting a claim of age discrimination.)
- [x] disability or perceived disability *(specify disability)* Multiple, see attachment par. 20 - 25

E. The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attachment section Facts paragraphs 14 - 56.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV. **Exhaustion of Federal Administrative Remedies**

   A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
   Nov. 22 2019

   B. The Equal Employment Opportunity Commission *(check one)*:

   ☐ has not issued a Notice of Right to Sue letter.

   ☑ issued a Notice of Right to Sue letter, which I received on *(date)* Dec. 2 2020

   *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

   C. Only litigants alleging age discrimination must answer this question.

   Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

   ☐ 60 days or more have elapsed.
   ☐ less than 60 days have elapsed.

V. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attachment section Relief paragraph 57.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Feb. 24 2021

Signature of Plaintiff: *[signed MB]*

Printed Name of Plaintiff: Matthew Charles Belanger

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

Introduction

1. Matthew Charles Belanger (Belanger), the plaintiff, alleges that he has been illegally discriminated against by the defendants, New York University (NYU) and NYU Shanghai (NYUSH), on the basis of disability / perceived disability, sex / gender, race, and national origin by administrators at NYU and NYUSH, following occupational injury in February 2017 resulting in physical and psychological disability. After Belanger accused some of these administrators with discrimination directly in March 2017, and after Belanger reported some of these administrators to NYU's Office of Equal Opportunity in June 2018 Belanger has been further discriminated against, retaliated against and harassed by the same and other administrators at NYU and NYUSH. Belanger filed a charge against NYU and NYUSH to the U.S. Equal Opportunity Commission (EEOC) on November 22, 2019.

2. Belanger alleges that NYU and NYUSH have subjected him to failure to promote, failure to hire, and failure to accommodate, a harassing, hostile, and abusive employment environment, among other offenses as outlined in this complaint. Belanger alleges that NYU and NYUSH have acted in violation of The Americans with Disabilities Act of 1990 (ADA) as amended, and Title VII of the Civil Rights Act of 1964 as amended, The Rehabilitation Act of 1973 as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, New York Labor Law, New York Human Rights Law, and New York City Human Rights Law. Belanger also alleges that NYU and NYUSH's actions represent an ongoing violation and amount collectively to a harassing, hostile, and abusive employment environment.

3. Belanger has been unable to reach settlement with NYU and NYUSH through mediation as provided by the EEOC. Belanger received notification of his right to sue from the EEOC on December 2, 2020, however the EEOC did not provide Belanger with an opportunity for rebuttal before concluding their investigation. Belanger is therefor requesting on this day February 24, 2021 that this Court provide him with relief.

The Plaintiff

4. Matthew Charles Belanger is a faculty member, an employee working for both plaintiffs, holding a type of cross-appointment with NYU and NYUSH. Belanger has worked at various locations, including at NYUSH's campus in Shanghai, at NYU's main campus in New York, throughout many locations of the NYU Global Network, and from his home in the United States of America (USA). Belanger is a white male with a national origin in the USA.

The Defendants

5. NYU is the largest private university in the USA, incorporated as a not-for-profit corporation within the state of New York, with a primary campus located in New York City headquartered at 70 Washington Square South, New York, NY 10012. NYU operates two additional portal campuses and eleven other academic centers around the world, all part of the NYU Global Network.

6. NYUSH is the third degree granting portal campus of the NYU Global Network, registered in The People's Republic of China (PRC) as Shanghai New York University and operating as NYU Shanghai. NYUSH is located at 1555 Century Avenue, Pudong New District, Shanghai, China 200122. NYUSH also conducts business and maintains an office in the USA at 14 East 4th Street, New York, NY 10012. NYUSH is a Sino-US joint-venture between NYU and East China Normal University (ECNU), with financial support coming from NYU, the city of Shanghai, and the district of Pudong, among others.

Places of Employment

7. Belanger is employed at NYUSH's campus in Shanghai located at 1555 Century Avenue, Pudong New District, Shanghai, China 200122 through his primary appointment. The phone number for this

place of employment is +86 21 2059 5000.

8. Belanger is also employed at NYU's main campus in New York City located at 70 Washington Square South, New York, NY 10012 through cross-appointment. The phone number for this place of employment is +1 212 998 1212.

9. Belanger was also denied employment at NYU's main campus. The address and phone number for this location can be found directly above.

## Jurisdiction

10. This court holds jurisdiction over NYU and NYUSH pursuant to various federal, state, and city laws by virtue of the fact that NYU is headquartered in and conducts significant business in New York City, in the state of New York, and in the USA. NYUSH is controlled by NYU, and also conducts business in New York City, in the state of New York, and in the USA.

11. According to NYU's financial statements NYU operates NYUSH, and establishes NYUSH's budget according to NYU's financial objectives, including for the financial benefit of NYU, after receiving funding from various sources. NYU administrators were and are responsible for the design, construction, and operation of NYUSH's academic building. NYUSH issues graduates American degrees endorsed by NYU's President and Board of Trustees. NYU's Curriculum Committee approves important aspects of NYUSH's curriculum. NYU's Office of General Counsel (OGC) dictates the legal affairs of NYU and NYUSH. NYUSH has administrative personnel including Deans, a Provost, a Vice Chancellor, and Chancellor, many of whom hold cross-appointments with NYU, acting simultaneously as agents of NYU and NYUSH. The Vice Chancellor and Chief Executive Officer of NYUSH reports directly to the President of NYU. Although NYUSH maintains a secret Board separate from NYU's Board of Trustees, multiple NYU employees participate in NYUSH's Board meetings, and NYUSH is ultimately controlled by the Provost, President, and Board of Trustees of NYU, all based in New York, as established through policy and practice both historically and up to the present day.

12. NYU's partner ECNU is absent from the employment and administrative processes of NYUSH, at least as far as they relate to faculty appointments, where NYU's Office of Faculty Appointments (OFA), a division of NYU's Office of the Provost overseen by NYU's Associate Provost for Academic Appointments based in New York plays a central role. NYU's Faculty Handbook and other policy, including NYU's Non-Discrimination and Anti-Harassment policy, govern employment terms at NYU and NYUSH. And NYU's Both / And policy requires that faculty at an NYU college in New York participate in and ultimately approve faculty appointments, reappointments, and promotions for many faculty positions at NYUSH, including for that of Belanger. NYU's Provost serves as the final arbiter for grievances that arise from reappointment and promotion processes at NYUSH. Furthermore, NYU's Office of Equal Opportunity (OEO), also based in New York, is involved in decision making about medical leave and disability accommodation for employees at NYUSH, and conducts internal investigations into allegations of discrimination occurring at NYUSH. Finally, a great deal of NYUSH's business is conducted over NYU's network infrastructure, including especially through email maintained by NYU and Google in the USA.

## Venue and Jury Demand

13. Belanger asserts that this Court is the appropriate venue for this complaint because of the court's jurisdiction, as outlined above. Belanger requests that the Court provide him with a jury trial.

Facts

14. Belanger was hired in August 2013 as a faculty member for NYUSH in the Interactive Media Arts (IMA) program at the rank of Assistant Professor, a title used to designate tenure track appointments within NYU and throughout academia after an interview process conducted by and only with the Senior Vice Provost of NYU. Belanger's first three employment contracts were negotiated directly with NYU's Senior Vice Provost. Language on NYUSH's faculty recruitment website at the time of Belanger's hire, and for sometime thereafter, suggested that faculty of NYUSH were also faculty of NYU.

15. In Belanger's third year of employment he was asked by NYU's OFA to accept a title change to that of Assistant Arts Professor, so as to conform with the practice at NYU Tisch School of the Arts (NYUT), the college in New York that Belanger's program in Shanghai corresponds to and coordinates with. According to NYU policy and practice, Arts faculty are a type of faculty appointment said to run parallel to the tenure track, with comparable standing and rights, and subject to NYU's Both / And policy. Belanger accepted this change under the condition that he would be grandfathered into the established entitlements and benefits of the faculty line that he had been hired into, which has included as a matter of policy and practice both teaching release and a year of sabbatical following promotion, as well as a specific employment benefits package.

16. Belanger has also held various administrative positions at NYUSH, including that of Assistant Dean for Emerging Media, until May 2019 when this position was eliminated. A large percentage of Belanger's work as an administrator and faculty member involved developing aspects of the NYU Global Network, including especially while working in New York and on behalf of NYU to develop new academic programs. As an example, Belanger was deeply involved in the development of a new masters program, operated jointly by NYU and NYUSH. This program now operates under the name IMA Low Res.

17. In 2015 NYU recognized Belanger's numerous contributions to the NYU Global Network through the award of a Global Network Professor (GNP) appointment at the rank of Global Network Assistant Arts Professor, a type of faculty position at NYU. Belanger's rank at NYU is associated with and linked to his rank at NYUSH through this cross-appointment. NYU's Faculty Handbook and NYU's GNP policy are among the primary documents governing Belanger's employment with NYU and NYUSH. The handbook describes GNP appointments as fundamentally like that of other faculty positions at NYU. GNP policy further describes positions of this type as a cross-appointment, with specific rights, duties, and privileges, including the right to engage in teaching assignments in New York. NYU and NYUSH also regularly make use of cross-appointments, as well routinely provide short and long term reassignments to faculty and administrators between the various sites of the NYU Global Network, including between NYU and NYUSH.

18. Belanger's supervisors at NYUSH are NYUSH Dean of Arts and Sciences Maria Montoya, a female of Hispanic or Latino descent, NYUSH Provost Joanna Waley-Cohen a white female, and NYUSH Vice Provost Jeffrey Lehman a white male. Belanger's supervisor at NYU includes NYUT Associate Dean of Emerging Media Daniel O'Sullivan a while male.

19. As of the date of this filing, Belanger is still employed by NYU and NYUSH, however at the time of his last contract renewal with NYUSH in May 2019 he was made to accept a demotion, despite participating in what he believed was a promotion process in January 2018, and what he believed was a grievance process in October 2018. Belanger's administrative appointment was not renewed despite the fact that Montoya had previously expressed in email that this position would be renewable at Belanger's choice. Montoya also failed to correct the cause for Belanger's grievance by May 2019 as she suggested she would. And in June 2019 Belanger's title and benefits were reduced for his remaining faculty position. As a result, after more than 7 years of distinguished service to the

university, Belanger's position and benefits are now substantially lower than when he first joined.

20. Belanger was born with Congenital Talipes Equinovarus, commonly known as Clubfoot, which has always affected his ability to stand, walk, and balance, and has been a source of chronic pain. Bullying Belanger experienced as a child related to this disability, particularly as experienced in academic environments, has left him traumatized even as an adult. Belanger has also experienced regular episodes of Renal Colic, commonly known as Kidney Stones, since approximately 2006. These episodes are painfully disabling, affect Belanger's concentration, and have lasted at times for over a month.

21. Belanger suffered Lumbar Disc Herniation while traveling to work on or around February 13, 2017. Belanger spent a week in the hospital unable to perform self-care due to the intense pain. On his return to work a week later Belanger required the use of mobility aides such as a wheelchair, walker, and cane, as well as back support for months afterwards, and at various other times, often for months at a time since his initial diagnosis. Belanger has at times difficulty walking, bending, and sitting, as well as with concentration due to his chronic pain. Belanger engages regularly in physical therapy, and other forms of treatment on a weekly basis to the present day.

22. Soon after Belanger's return to work in March 2017, Waley-Cohen and Montoya attempted to renege on a contract extension that had been awarded to Belanger in January 2017, just prior to his disabling injury. At this time, Belanger also requested a postponement of his faculty reappointment and promotion process due to his disability, which Montoya and Waley-Cohen also refused. Belanger directly confronted Montoya and Waley-Cohen by accusing them of disability discrimination for the first time in April 2017.

23. Waley-Cohen and Montoya eventually provided Belanger with the contract extension, however following this and over time Montoya and Waley-Cohen's discriminatory, retaliatory, and harassing behaviors intensified. In June 2018 Belanger reported Waley-Cohen and Montoya to NYU's OEO. Shortly after this, in or around August 2018, Belanger was diagnosed with an Anxiety Disorder and Depression as a result of his chronic pain and due to the employment environment at NYUSH. Since his initial diagnosis, Belanger's anxiety and depression has been disabling and at times completely incapacitating to him. Belanger's symptoms have profoundly impacted his ability to sleep, to concentrate, and to communicate with others, especially through email.

24. In August 2018 Waley-Cohen told Belanger that she didn't know why he didn't just take a medical leave, and in September 2019 Waley-Cohen told Belanger in email that he may no longer be fit for duty after he requested a brief meeting postponement while suffering from an episode of Lower Back Pain and Renal Colic simultaneously.

25. In October 2018 Belanger experienced an episode of elevated anxiety at work consistent with a Panic Attack while experiencing withdrawal from the opioid medications he had been administered and prescribed between August and September of 2018. Following this first and only Panic Attack at work, Belanger was made to choose between medical leave and disciplinary action, including the possibility of termination. Despite requests that Belanger be provided with time to consult with a lawyer and his doctor, he was not allowed adequate time, and in November 2018 Belanger accepted the terms of a punitive and discriminatory medical leave while under duress.

26. NYU and NYUSH failed to provide Belanger with timely information that his doctors had requested about the fitness for duty and disability accommodation process, and failed to return Belanger to work on time in June 2019. Belanger filed a charge of discrimination with the EEOC's New York office on November 22, 2019. Belanger asserts that NYU and NYU Shanghai's defense, as asserted by NYU and NYUSH to Belanger and the EEOC between July and August of 2020, that Belanger is not an employee of NYU and that NYUSH is not controlled by NYU, is pretextual.

27. In support of Belanger's complaint of discrimination, retaliation, and harassment against NYU and NYUSH he alleges the following:

Count One: Disability Discrimination and Failure to Accommodate

28. NYU President Andrew Hamilton, the NYU Board of Trustees, and Lehman subjected Belanger to disability discrimination because NYUSH's academic building, designed, constructed, and operated with their oversight, is neither a safe nor accessible public accommodation to people with disabilities. Common areas throughout the building, including entrances, elevators, and restrooms do not provide equal access to people with disabilities, including Belanger. The NYU Board of Trustees, including Hamilton, additionally subjected Belanger to disability discrimination by failing in their duty to "ensure compliance with the university's legal obligations in the various jurisdictions in which it operates — local, state, federal, and international."

29. Lehman and NYU OEO Executive Director Mary Signor subjected Belanger to disability discrimination by failing to act in response to warnings and requests made by Belanger beginning in or around May 2019 related to accessibility shortcomings and barriers present at the NYUSH academic building in common areas, especially restrooms. After failing to respond to Belanger's concerns and requests for months, Signor stated that the ADA does not apply to the NYUSH academic building, and that accessibility concerns and barrier removal requests must come as a result of a request for accommodation with supporting medical documentation.

30. Hamilton, the NYU Board of Trustees, and Signor also subjected Belanger to disability discrimination because the Non-Discrimination and Anti-Harassment policy of NYU maintained by Signor's office, which reports to Hamilton, have contributed to discrimination at NYU and NYUSH. These policies focus overwhelmingly on sexual misconduct, and inadequately define protections for people with disabilities, or consequences for those who commit non-sexual offenses. NYU therefor has not treated with the same importance other forms of discrimination and harassment in policy, training, or practice.

Count Two: Disability Discrimination and Retaliation

31. Waley-Cohen and Montoya subjected Belanger to disability discrimination when they refused to honor prior written employment offers and agreements following Belanger's physical injury and disability in February 2017, including by rescinding an employment offer that had been issued just prior to Belanger's injury and disability, and by refusing to postpone Belanger's faculty promotion process despite request as a result of injury and disability in April 2017, resulting in Belanger's initial charge of discrimination against Waley-Cohen and Montoya made directly to them.

32. Waley-Cohen and Montoya subjected Belanger to disability discrimination by failing to adequately communicate new medical leave policy extending the allowable time off from days to months in January 2017, despite being aware of Belanger's injury and disability, and by also failing to make him aware of NYU's Office of Equal Opportunity (OEO), as well as by failing to make Belanger aware of important policy relevant to medical leave, disability accommodation, and workers compensation, despite his inquiry into such policies and entitlements in March 2017.

33. Montoya subjected Belanger to disability discrimination by requiring Belanger to provide medical documentation when requesting a reasonable accommodation, a Business Class upgrade on a flight to conduct work at NYU in New York, when Belanger's disability was both known and obvious in May 2017.

34. Waley-Cohen subjected Belanger to disability discrimination by telling him in a meeting, "I don't know why you don't just take a medical leave." following a series of hospitalizations between August and September 2018, and by calling into question in email his fitness for duty after Belanger asked

for a short meeting postponement following a re-hospitalization in September 2018.

35. NYUSH Assistant Director of Human Resources Claire Chen subjected Belanger to disability discrimination by requiring medical records when Belanger tried to report occupational illness in or around September 2018.

Count Three: Disability Discrimination, Sex / Gender Discrimination, Retaliation, and Unequal Terms of Employment

36. Lehman, Waley-Cohen and Montoya subjected Belanger to disability discrimination, sex / gender discrimination, retaliation, and unequal terms of employment by offering Belanger less favorable employment terms relative to a similarly situated female colleague without a disabling condition, including by omitting Belanger's entire administrative salary from Belanger's employment contract in violation of PRC law, by paying Belanger's salary as a series of one-time payments rather than as regular salary, and by refusing to make retirement and other contributions for Belanger's administrative salary between April 2017 and May 2019. NYUSH refused to correct the problem in or around May 2019 when Belanger learned about the discrepancy as compared to the similarly situated colleague and brought it to the attention of NYUSH.

Count Four: Disability Discrimination, Retaliation, and Failure to Hire

37. NYUT Associate Dean for Emerging Media Daniel O'Sullivan and Waley-Cohen subjected Belanger to disability / perceived disability discrimination and retaliation, including failure to hire, when they refused to hire Belanger as a faculty member and Director of the IMA Low Res program at NYU in New York. Belanger participated deeply in the development of this new program, and had previously been described by O'Sullivan as the top candidate for these positions. O'Sullivan and Waley-Cohen ultimately refused to consider Belanger for the position as it had been created, in New York, and instead offered the position to a less experienced and less qualified colleague who had no prior involvement in the development of the program. This hire was also made in violation of NYU hiring policy and procedures for Arts faculty. Belanger became aware of these discriminatory circumstances between February 2019 and August 2019.

38. This failure to hire had a negative impact on Belanger's health because it limited his access to the broader range of medical treatment options available only in the United States. In addition, Belanger is the only employee, out of all similarly situated employees to have participated in the development of NYU's interactive media programs within the NYU Global Network, to be excluded from a teaching opportunity in New York, despite having greater experience, more qualifications, and a stronger service record to the university than the other employees at the time they were offered teaching and administrative opportunities at NYU in New York.

Count Five: Disability Discrimination, Retaliation, and Failure to Promote

39. Waley-Cohen and Montoya subjected Belanger to disability discrimination, retaliation, and failure to promote at NYUSH and NYU despite prior request and eligibility in May 2018, and also by failing or refusing to correct what Montoya characterized as a "clerical error" during Belanger's grievance process leading to Belanger's non-promotion at the time of his contract renewal in May 2019, by reducing Belanger's faculty title and rank from Assistant Arts Professor to Assistant Arts Professor of IMA in contrast with his reappointment outcome, in contrast to similarly situated faculty at NYU, and prior employment contracts / agreements with NYUSH in May 2019, and by refusing to continue / conclude Belanger's grievance process after he returned to work from medical leave in February 2020.

### Count Six: Disability Discrimination, Sex / Gender Discrimination, Race / Color Discrimination, and Retaliation

40. Lehman, Waley-Cohen, and Montoya subjected Belanger to disability discrimination, sex / gender discrimination, and failed to show business necessity in the elimination of Belanger's administrative position as Assistant Dean in June 2019. Lehman, Waley-Cohen, and Montoya subjected Belanger to disability discrimination and retaliation when they did not in May 2019 honor a written statement made by Montoya that Belanger's administrative appointment would be renewable at Belanger's choice.

41. Belanger's administrative position at NYUSH was eliminated at a time when NYUSH was experiencing ongoing growth and continued administrative need. The work that Belanger previously did as an administrator is now done by others, and multiple other female staff members were offered comparable administrative positions to that of Belanger's former position in the same general timeframe that his position was eliminated.

42. Waley-Cohen and Montoya have subjected several white male employees to sex / gender discrimination and race / color discrimination. Waley-Cohen and Montoya have favored women in administrative hiring and promotion by not allowing white men, including Belanger, to compete for administrative positions awarded to women. Belanger became aware of this situation between May and August 2019.

43. Lehman, Waley-Cohen, and Montoya also failed to provide Belanger with the resources necessary to retain his administrative position, including by failing to make Belanger aware of the disability accommodation process at NYUSH, and by failing to make Belanger aware of NYU's OEO.

### Count Seven: Disability Discrimination and Retaliation

44. Lehman and Montoya subjected Belanger to disability discrimination and retaliation when he was made to choose between a medical leave with punitive and exclusionary terms and conditions, or face disciplinary action, including the possibility of termination, after he reported to Waley-Cohen and Montoya his diagnosis for an Anxiety Disorder, and following a single episode of anxiety at work in November 2018. Similarly situated faculty, including those who had previously acted in similar ways, but who do not have a known disability, were not forced to choose between medical leave and disciplinary action.

45. Lehman subjected Belanger to disability discrimination by including language in a draft version of a medical leave document in November 2018 suggesting that Belanger was a danger to others, based on stereotype, assumptions, and misconceptions of mental illness. Lehman also drastically increasing security measures at work following Belanger's episode of anxiety.

46. Lehman subjected Belanger to additional disability discrimination through the punitive and exclusionary terms of Belanger's medical leave which forbid him from entering the his places of work. These terms also required that Belanger provide a fitness for duty certification for leave that he did not request, and which was not Family and Medical Leave Act (FMLA) leave. The terms of this leave violated NYUSH policy, which does not define a fitness for duty requirement. In addition, the duration of this leave until June 2019, determined by Lehman and others at NYU, was not based on objective medical evidence, or Belanger's medical need.

47. Waley-Cohen and Montoya subjected Belanger to disability discrimination when they conducted a meeting with Belanger's colleagues in November 2018 following his medical leave in which they discussed Belanger's episode of anxiety, the details of his medical leave, stated that Belanger would never serve as an administrator ever again, and said that administrators at NYU had participated in decision making for this medical leave.

Count Eight: Disability Discrimination, National Origin Discrimination, Retaliation, and Failure to Accommodate

48. Signor and NYU OEO Investigator Bradley Domangue subjected Belanger to disability discrimination and national origin discrimination between April 2019 and February 2020 through their refusal to explain why Belanger's medical leave was different from NYUSH's standard medical leave, as well as by failing to timely and adequately explain NYU's medical documentation requirements as they relate to fitness for duty and disability accommodation, by failing to articulate the requirement that medical documentation must include work restrictions, by refusing to say which medical condition(s) Belanger was required to provide fitness certification for, and for requiring a standard of medical documentation inconsistent with PRC law and medical practice, by failing to timely respond to requests from Belanger's doctors for additional information, and by failing to return Belanger to work in a timely manner in June 2019.

49. Colyer-Brown subjected Belanger to disability discrimination by rejecting the first fitness for duty certification Belanger provided to NYU in February 2020, even though it fully articulated Belanger's fitness for duty and completely met with the terms of his medical leave. This delayed Belanger's return to work significantly, and negatively impacted his assignment on return to work in February 2020.

50. Signor and Domangue subjected Belanger to disability discrimination, including failure to accommodate, by requiring Belanger to provide medical documentation and participate in competitive hiring processes after he requested a teaching assignment in New York as a disability accommodation on multiple occasions between July 2019 and July 2020. Belanger learned that his GNP position at NYU entitles him to teach in New York without the need to participate in a competitive hiring process in or around May 2020, and similarly situated colleagues within the NYU Global Network have been granted teaching assignments outside of their primary appointment, including at NYU in New York, without being required to provide medical documentation or to participate in a competitive hiring process.

51. Signor subjected Belanger to additional disability discrimination by refusing to further discuss this form of accommodation with Belanger in July 2020, after Belanger provided relevant medical documentation in June 2020.

Count Nine: National Origin Discrimination and Retaliation

52. Lehman subjected Belanger to national origin discrimination and retaliation by denying Belanger's request for a longer / open-term contract in May 2019 as compared to similarly situated faculty at NYU and similarly situated faculty of Chinese national origin at NYUSH and as required by PRC law.

Count Ten: Disability Discrimination, Retaliation, and Harassment

53. Lehman subjected Belanger to disability discrimination, retaliation, and harassment by unfairly and repeatedly calling into question Belanger's performance at work while refusing to give specific details or release Belanger's prior performance evaluations, including by stating in email that Belanger's disability, medical leave, and need for accommodation were inconvenient in April 2019, following Belanger's internal charges of discrimination, retaliation, and harassment against Lehman, Waley-Cohen, and Montoya.

54. All prior performance evaluations indicate that Belanger was meeting or exceeding expectations through May 2019. Lehman also subjected Belanger to retaliation by refusing to meet with him after previously agreeing to do so in May 2019.

Count Eleven: Harassing, Hostile, and Abusive Employment Environment

55. Lehman, Waley-Cohen, and Montoya subjected Belanger to disability / perceived disability discrimination, and retaliation by subjecting Belanger to increased and unfair criticism since 2017 including up to the present, not announcing in email Belanger's administrative appointment as done with other similar appointments in April 2017, by eliminating support staff and overturning a previously awarded request for additional support staff between April 2017 and August 2017, by not conducting Belanger's reappointment / promotion process in accordance with NYU Arts faculty policy and practice in January 2018, by removing job responsibilities and not involving Belanger in matters that he was previously involved in such as academic planning and faculty hiring, by subjecting Belanger to unfair and increased criticism and hostility, by not inviting Belanger to participate in functions that he was previously included in such as meetings and dinners with guests, and by not allowing Belanger to participate in important work meetings remotely while on medical leave in April 2019, by denying Belanger a full year sabbatical in contrast with NYU and NYUSH policy and practice in November 2018, by requiring only Belanger to return equipment borrowed for work and research purposes in May 2019, by demolishing Belanger's office as part of an unnecessary construction project resulting in an inferior and less accessible office in July 2019, by omitting Belanger from NYU and NYUSH online faculty directories in September 2019.

56. Belanger alleges that the complaints in this count, and as outlined throughout this entire complaint, represent a harassing, hostile, and abusive employment environment, and that NYU and NYUSH have acted with great malice and indifference to Belanger's career and health.

Relief

57. Belanger requests the Court provide relief as follows:

   A. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting NYU and NYUSH from engaging in further discriminatory, retaliatory, or harassing business practice.
   B. That the Court order NYU and NYUSH to provide Belanger with a retroactive promotion of his faculty position to the level of Assistant Arts Professor with NYU and NYUSH.
   C. That the Court order NYUSH to extend Belanger's current employment contract in line with what is available to similarly situated faculty at NYU and similarly situated faculty of Chinese national origin at NYUSH.
   D. That the Court order NYU to provide Belanger with teaching and administrative opportunities in New York comparable to that already awarded to similarly situated colleagues.
   E. That the Court grant Belanger full back pay and benefits and front pay and benefits including standard increases for such teaching and administrative opportunities that he has been denied by NYU and NYUSH.
   F. That the Court grant Belanger $300,000 in compensatory damages for harm to his career, finances, health, and other harms, caused by the unlawful actions of NYU and NYUSH.
   G. That the Court grant Belanger punitive damages for the malicious conduct he has been subjected to by NYU and NYUSH.
   H. That the Court order NYU and NYUSH to pay Belanger's expenses of litigation, including reasonable attorney's fees.
   I. That the Court grant Belanger a jury trial.
   J. That the Court grant Belanger all other relief the Court deems just and proper.

Respectfully Submitted,

_____     02.24.2021
Matthew Charles Belanger              Date

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Matthew Belanger
447 Broadway
2nd Floor, #345
New York, NY 10013

From: Boston Area Office
John F. Kennedy Fed Bldg
15 New Sudbury Street, Room 475
Boston, MA 02203

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2019-02908 | Edward J. Ostolski, Investigator | (617) 865-3675 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)   **Respondent was not the employer**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Feng K. An,
Area Office Director

November 30, 2020
(Date Mailed)

Enclosures(s)

cc: Daniel Saperstein
Associate General Counsel
70 Washington Square South
New York, NY 10012

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

**To:** Matthew Belanger
447 Broadway
2nd Floor, #345
New York, NY 10013

**From:** Boston Area Office
John F. Kennedy Fed Bldg
15 New Sudbury Street, Room 475
Boston, MA 02203

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 523-2021-00362 | Edward J. Ostolski, Investigator | (617) 865-3675 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)    **Respondent is not in the USA**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Feng K. An,
Area Office Director

November 30, 2020
*(Date Mailed)*

Enclosures(s)

cc:
Daniel J. Magida, Esq.
NYU SHANGHAI
1555 Century Avenue
Pudong New Area Shanghai, China

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 520-2019-02908 |

NEW YORK DISTRICT OFFICE
DATE RECEIVED NOV 22 2019

**New York State Division Of Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Matthew Belanger | 212-203-0405 | 07-15-1976 |

Street Address: 447 Broadway, 2nd Floor #345, New York, NY 10013

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| New York University | Unknown | 212-998-2240 |

Street Address: 70 Washington Square South, 11th Floor, New York, New York 10012

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NYU Shanghai | Unknown | +86-21-2059-5000 |

Street Address: 1555 Century Avenue, Pudong New District, Shanghai, China 200122

DISCRIMINATION BASED ON (Check appropriate box(es)):
[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 02-21-2017   Latest: 10-31-2019
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired as a faculty member, an Assistant Professor, by NYU Shanghai, part of the New York University (NYU) Global Network, in August 2013. Since that time, I have also held various administrative positions, including that of Assistant Dean for Emerging Media, until May 2019. In recognition of my many contributions to the NYU Global Network, I was awarded the title of Global Network Assistant Arts Professor at NYU in my third year of employment. I am currently still employed by NYU Shanghai as an Assistant Arts Professor of IMA. The position I hold today is lower than the position I was hired into more than six years ago.

I believe that I have been and continue to be discriminated against by NYU Shanghai and parent organization NYU on the basis of disability, gender, race, and national origin following my injury and disability in February 2017 as well as an initial charge of disability discrimination made by me against NYU Shanghai leadership in April 2017. I believe that I have been and continue to be discriminated against, retaliated against, and harassed for bringing multiple complaints of discrimination, retaliation, and harassment against my supervisors at NYU Shanghai. I believe that the acts alleged below represent an ongoing violation and amount collectively to a harassing and hostile work environment. I believe that NYU and NYU Shanghai have acted in violation of The Americans with Disabilities Act (ADA), as amended, and The Civil Rights Act of 1964, as amended. I allege the following in support of my charge of discrimination against NYU Shanghai and NYU:

[Continued on page 2.]

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

11-22-2019
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year) 11, 22, 2019

[Notary stamp: STATE OF NEW YORK NOTARY PUBLIC, qualified in Nassau County, 01RE6322246, Commission Expires 03/30/2023]

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2019-02908 |

**New York State Division Of Human Rights** and EEOC
*State or local Agency, if any*

1. Vice Chancellor Jeffery Lehman, Provost Joanna Waley-Cohen and Dean Maria Montoya at NYU Shanghai subjected me to disability discrimination when they refused to honor prior written employment agreements following my physical injury in February 2017, resulting in my initial internal charge of discrimination against them in April 2017.
2. Vice Chancellor Lehman, Provost Waley-Cohen and Dean Montoya subjected me to disability discrimination and retaliation, by offering me less favorable employment terms relative to similarly situated peers, including by omitting my entire administrative salary from my employment contract and by paying this salary as a series of one-time payments rather than as regular salary beginning in April 2017, and by refusing to make retirement and other contributions for my administrative salary between April of 2017 and May 2019.
3. Provost Waley-Cohen and Dean Montoya subjected me to disability discrimination by failing to adequately announce or make me aware of amendments made to medical leave policy extending the allowable time off from days to months in January 2017, despite being aware of my injury and disability in February 2017, and by also failing to make me aware of NYU's Office of Equal Opportunity and / or policy relevant to medical leave, disability accommodation, and workers compensation, despite my inquiry into such policies and entitlements in March 2017.
4. Vice Chancellor Lehman subjected me to disability discrimination because the academic building in Shanghai, designed and constructed with his oversight until it's opening in September 2014, is neither a safe nor accessible public accommodation to people with disabilities, and because he and other members of NYU leadership, including Executive Director of the Office of Equal Opportunity (OEO) Mary Signor, have failed to act in response to warnings in May 2017 and again in May 2019 from myself and others about accessibility shortcomings and barriers present in and around the NYU Shanghai academic building, including at entrances, elevators, restrooms, and other common areas. After failing or refusing to respond to my requests for months, Executive Director of The OEO Signor, stated that The ADA does not apply, and that accessibility concerns and barrier removal requests must come as a result of a request for accommodation after I return to work. I believe this assertion represents an intent to engage in systemic discrimination through a pattern or practice of disability discrimination across the entire NYU Global Network, effecting untold numbers of staff and students.
5. Dean Montoya subjected me to disability discrimination by requiring me to provide medical documentation when requesting a reasonable accommodation, a Business Class upgrade to the United States for work, when my disability was both known and obvious in or around May 2017.
6. Associate Dean for Emerging Media at NYU Tisch Daniel O'Sullivan and Provost Waley-Cohen subjected me to disability discrimination and retaliation by changing and reducing the previously established terms of a position in New York when negotiating with me, by splitting the position between New York and Shanghai, by reducing the position in rank from Director to Co-Director, by refusing to consider me for the position in New York, and ultimately by offering the position under more favorable terms to a less experienced and less qualified colleague, by giving the position to him in New York, by returning the position's rank to Director from Co-Director, and by increasing the term of the position from one year to four. I became aware of these circumstances between February 2019 and August 2019. This act has negative consequences for my health, because it limits my ongoing access to a broader range of medical treatment options available only in the United States. In addition, I am the only employee, out of several similarly situated employees to have participated in the development and administration of NYU's two interactive media academic programs at NYU Shanghai and NYU Abu Dhabi, to be excluded from a position in New York, despite having greater experience, greater qualification, and a stronger service record to the university than the others at the time of their hires in New York.
7. Provost Waley-Cohen subjected me to disability discrimination by calling into question in email my fitness for duty after I asked for a short meeting postponement as a result of medical need and treatment, in September 2018 and in close temporal proximity to several of the adverse employment decisions outlined here.
8. NYU Shanghai Human Resources Department subjected me to disability discrimination by requesting my medical records when I tried to report occupational illness and accessibility concerns in September 2018.
9. Vice Chancellor Lehman and Dean Montoya subjected me to disability discrimination when I was made to choose between a medical leave or disciplinary action, including the possibility of termination, after I reported to Provost Waley-Cohen and Dean Montoya a diagnosis for an anxiety disorder, and following a single episode of anxiety at work in November 2018.
10. Vice Chancellor Lehman subjected me to disability discrimination through the punitive and exclusionary terms of my medical leave, which are inconsistent with United States and Chinese law, NYU Shanghai policy and practice, and not based on objective medical evidence or my personal need or want in November 2018. This medical leave is a non-Family and Medical Leave Act (non-FMLA), because the FMLA does not apply extra-territorially.

[Continued on page 3.]

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct.<br><br>11-22-2019 *[signature]*<br>Date / Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT *[signature]*<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) 11,22,2019 *[notary signature & seal]* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2019-02908 |

**New York State Division Of Human Rights** and EEOC
*State or local Agency, if any*

11. Provost Waley-Cohen and Dean Montoya subjected me to disability discrimination when they conducted a meeting with my colleagues following my medical leave in which they discussed my conduct and medical leave, including by assuring that I would never be an administrator again, in November 2018.
12. Vice Chancellor Lehman and Executive Director of the Office of The OEO Signor subjected me to disability discrimination by failing to return me to work in a timely manner by enforcing the unfair terms of my leave, and through slow response to requests for information about the return to work process and disability accommodation.
13. Vice Chancellor Lehman, Provost Waley-Cohen, and Dean Montoya subjected me to acts of retaliation, including: by not announcing by email my administrative promotion as done with other promotions in April 2017, by eliminating support staff and overturning a previously awarded request for additional support staff between April 2017 and August 2017, through the failure to promote my faculty position despite prior request in May of 2018, through the elimination of my administrative position in June 2019, through the obstruction of my grievance process and promotion on a continuing basis, by reducing my title from Assistant Arts Professor to Assistant Arts Professor of IMA in contrast with NYU convention, my reappointment outcome, and prior agreement in May 2019, by denying me sabbatical in contrast with NYU policy and practice in November 2018, by requiring only me to return equipment borrowed for work and research purposes in May 2019, by reducing my employment benefits in June 2019, by demolishing my office as part of an unnecessary construction project resulting in an inferior and less accessible office in July 2019, by omitting me from my academic program's online faculty directory in September 2019.
14. Vice Chancellor Lehman, Provost Waley-Cohen, and Dean Montoya subjected me to additional ongoing disability discrimination and retaliation by removing job responsibilities and not involving me in matters that I was previously involved in such as academic planning and faculty hiring, by subjecting me to unfair and increased criticism and hostility, by not inviting me to participate in functions that I was previously included in such as meetings and dinners with guests, by barring me from the workplace entirely while on medical leave, and by not allowing me to participate in meetings remotely, also while on leave.
15. Vice Chancellor Lehman has engaged in retaliation and harassment by repeatedly calling into question my job performance, but only following my complaints of discrimination, retaliation, and harassment against himself, Provost Waley-Cohen, and Dean Montoya, while consistently declining to give specific details, and when all prior job performance evaluations indicate that I was meeting or exceeding expectations through June 2019.
16. Executive Director of The OEO Signor subjected me to disability discrimination through a failure to accommodate my disabilities, by refusing to engage in the Interactive Process as defined by the ADA, after requesting that alleged performance problems be committed to writing and reassignment to another position, beginning in or around July 2019 and continuing.
17. Vice Chancellor Lehman subjected me to national origin discrimination through the denial of my request for a longer term or open-term contract, as compared to similarly situated colleagues in New York and Chinese colleagues in Shanghai, in May 2019. Based on my experience, I believe that NYU Shanghai is engaged in systemic discrimination or a pattern or practice that subjects non-Chinese nationals, including already myself, to national origin discrimination with regard to contract duration.
18. NYU Shanghai has failed to show business necessity for the elimination of my administrative position, because the organization is experiencing ongoing growth and administrative need, the work that I previously did is now done by others, and other staff members were offered comparable administrative positions to my prior position in the same general timeframe that my position was eliminated in June 2019.
19. Provost Waley-Cohen and Dean Montoya have engaged, over an extended period of time, in sex / gender discrimination and Dean Montoya additionally in racial discrimination, by harassing men of another race including at least three others who also brought complaints against them internally and through the EEOC within the past year, and by favoring women in administrative hiring and promotion by not allowing others, including myself, to compete for positions openly and competitively. Although I now believe this behavior has been going on since Dean Montoya joined NYU Shanghai, I became aware of the other discrimination claimants between April and August 2019.
20. NYU anti-discrimination and anti-harassment policies and practices contribute to discrimination because they focus overwhelmingly on sexual harassment. As a result, NYU does not treat with the same importance other forms of discrimination and harassment, including disability discrimination, in policy, training, or practice.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 11-22-2019<br>Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) 11,22,2019 |